## Case No. 15,665.

### UNITED STATES v. McCULLOUGH.

[22 Int. Rev. Rec. 202.]

District Court, S. D. New York. June, 1876.

INTERNAL REVENUE — KEEPING BOOKS — DEALERS IN FOREIGN SPIRITS—"PREMISES."

1. Dealers in foreign, as well as in domestic spirits, are subject to the requirements of the 45th section of the act of 1868 [15 Stat. 143], incorporated into the Revised Statutes, and are obliged to keep the books therein provided, and, in so far as they can, to make the entries therein specified.

2. Under this act, and under the warehouse act, the bonded warehouse in which the liquor dealer stores his goods, is to be regarded as his premises for the purposes of this suit, the warehouse becoming, by a transfer of the goods in bond, the premises of the vendor instead of the vendee.

[This was an information against Seymour McCullough, for the violation of section 45 of the act of congress of 1868 (15 Stat. 143).]

Roger M. Sherman, Asst. U. S. Atty.

G. W. Cotterill, for defendant.

BLATCHFORD, District Judge. This matter seems to me very plain. The information in this case is based upon a sale and delivery—a removal out of the stock or possession of the party of a package of spirits, containing not less than five wine gallons. It does not involve a question of receiving, and I see no difference whatever between the law as it was in 1868, and the section in the Revised Statutes; because in 1868 the provisions in regard to wholesale liquor dealers were precisely the same as they are in the Revised Statutes—that is, that a

wholesale liquor dealer had to pay a tax; that every person who sells or offers for sale foreign or domestic distilled spirits shall pay the tax, and this Mr. McCullough paid the tax, although he never dealt in domestic spirits, only in foreign spirits; never dealt in domestic wine, only in foreign wine. Now, the 45th section of the statute of 1868, which contained these same provisions provided that every wholesale liquor dealer—that is, every person within this category of selling or offering for sale either foreign or domestic spirits—shall provide a book, in the form prescribed by the commissioner of internal revenue; and whenever he sells any spirits—of course that means any spirits which, as a wholesale liquor dealer, he pays a tax in respect to which is foreign and domestic both—he shall enter, etc. Therefore to put the words "foreign and domestic" into the Revised Statutes is a mere interpretation of the law as it was at that time, and upon that the supreme court of the United States, in a recent case, has decided that we are to take the Revised Statutes as declaring what the law was at the time. And that is the sense in which we are to look at the Revised Statutes, and not as containing anything new. And I have no doubt whatever that under that authority, and as matter of fact, in the 45th section of the act of 1868, the word "spirits" meant foreign or domestic spirits. Now, this provision is very specific: "Every wholesale liquor dealer." And this defendant was in point of fact a wholesale liquor dealer, because he did deal in "foreign or domestic spirits," did in point of fact sell and offer for sale. And he recognizes himself as a wholesale liquor dealer by very properly paying his license, his taxes, and, therefore, he is a wholesale liquor dealer, and he is estopped from saying he is not a wholesale liquor dealer. Then the statute says, "Every person who sells or offers for sale foreign or domestic distilled spirits in quantities of not less than five wine gallons at the same time shall be regarded as a wholesale liquor dealer." Now, an importer of foreign spirits who, instead of putting them into consumption, entering them for consumption and putting them on a floor of his store, leaves them in the bonded warehouse of the government, has them in his stock quite as much as if they were in the floor of his store. They are his property, subject merely to the duty, and to the privilege which the government gives him in keeping them in warehouse subject to the payment of duty; and he is the owner of them, subject of course to the control which the government has for the purpose of securing its duty, and subject to the privilege that he has of having them exported out of the country by a drawback, without paying duty. But they are his stock, his property; and it would seem to me that the intention of the law when it says, "shall at the time of sending out of his stock or possession any

spirits," covers having them in a bonded warehouse; in order to avoid the difficulty of the importer saying, "Well, they are not in my possession; they are in the possession of the government." Then the point is taken, that the statute goes on to say, "and before the same are removed from his premises," as if that required that they should be upon his premises. Well, I think, if that were necessary, that under the warehouse act, and the privilege given to him, the party puts his goods into a bonded warehouse, for the purpose of this case. Those are his premises; the bonded warehouse is his premises; therefore even if that were necessary, as I have said, the prescription there is this, the undoubted sense of it is that the party shall at the time of sending out the spirits, and before he parts with such control and possession of them as he had, shall make this entry. That is the meaning and the sense of it, and even if it meant that it is necessary that they should be upon his premises, why, they are in his premises, under the warehouse acts. Because the provision of the warehouse acts is that they shall be sent to such bonded warehouse as he designates. That is, the law gives him the privilege of selecting the bonded warehouse; and, therefore, that they are in his premises for all practical purposes—for the purposes of this suit, I have no doubt whatever.

Now, it is said that this penalty is imposed only for a neglect or refusal to make entries therein specified; and that, that means that the refusal to make each and every of the above specified entries is necessary, to impose the penalty; and that the penalty cannot be imposed if a man is able, for instance, to make four entries and only makes three of them, that the penalty cannot be imposed for a failure to make four. I do not think the statute is capable of any such construction. I think that is one of those cases where the construction of the statutes is well settled and laid down; that it means a failure to make any of the above entries which he can make. Well, of course, he is not obliged to make entries which it is impossible to make. If he is required to put down in the book the serial number of the package, and it has no serial number on it, why, of course, he cannot put that on it; because there is no neglect or refusal to do what it is impossible to do. There can be no neglect or refusal to do what does not exist. But the meaning of the statute is that he shall do what he can do; that is, he shall enter the day when, the name and place of business of the person or firm to whom, the spirits are to be sent. That he can do. And he can also enter the quantity of spirits. Next is the number of gallons and the proof. If it is utterly impossible, then he is not obliged to do it, but, if he can, he must do it. Then if it is a branch of the statute which is applicable only to domestic spirits, that is incumbent on those

who deal in domestic spirits. It is not obligatory on those who deal in foreign spirits, simply because these foreign spirits have no serial numbers. Here is a statute which applies to wholesale liquor dealers, who deal both in foreign and domestic spirits; and, in so far as the requirements can be carried out, by dealers in foreign spirits, they are to do it. In so far as it requires things, some of which the foreign man cannot do, but the domestic man can do, of course the foreign man is obliged to do only those things which he can do, and the domestic man is obliged to do those which he can do. The reason of this statute is this, that the country, as we all know, as congress knew, is flooded with spirits concocted and made up here in imitation of foreign spirits. Every one—you and I—go to-day to our grocery-man, and get something called imported which never saw the other side of the water. Therefore it is that congress says, "We are going to compel every man to take out a license as a wholesale liquor dealer, even though he deals wholly in foreign spirits, and then we are going to require, as near as we can, this man who has a license to deal in foreign spirits to keep a record in a book of those foreign spirits, so that, when we are hunting round to see whether we have been defrauded, in respect to domestic spirits, and find that he has entered there some foreign spirits, then we have to trace back those spirits to see whether they are really foreign or domestic spirits. If they are foreign spirits, we find a record of them as foreign spirits; we have that record, and it enables us in that way to avoid being deceived, and to find out whether they are really domestic or foreign." It is suggested that there is a hardship to gentlemen in the foreign trade in keeping these books, because these books are books which are to be open to the examination of the revenue officers. Well, it is no more of a hardship than it is upon those persons who are dealers in domestic spirits. And so long as the necessity of the government, a legacy left us by the war, compels us to raise this revenue to pay our debts, and to be honest men, requires that we shall raise this revenue from spirits—and the experience of all governments shows that that is a thing which can best pay a large revenue—so long as we keep up that system of government we shall find it necessary not only to impose a tax upon persons who deal wholly in foreign spirits, but to have such safeguards in respect to all the spirits which pass through the hands of dealers, that the government may, if possible, identify those spirits and have a record of them. Of course it is a hardship on every one. I suppose no one ever wants to have any restriction. It is a hardship to have to pay a hundred dollars a year. But if a person chooses to come to the United States and do business here, he must do it subject to such reasonable and proper laws as, in the collection of the revenue, and in the payment of our honest obligations, it becomes necessary to impose. I see nothing that is harsh or unequal in this law. It is no more subject to criticism on that ground than any law on the subject of distilled spirits. It has been in force now a great many years, left upon the statute books, not annulled, and re-enacted by successive congresses, elected by the people, fresh from the people, only two years from the people, and who declare solemnly that these provisions are necessary for the proper enforcement of these revenue laws. And, like other laws which are subject to abuse, when they are abused, the proper authority, when called upon, will see that they are not used for any improper purpose. If I had any hesitation or doubt upon it I should take it into consideration, but I have not any doubt whatever that I must direct a verdict for the United States for $100. Because, as I understand it, the proof in this case is that Mr. McCullough sold these imported spirits, and himself was the means of delivering them from the bonded warehouse. The commissioner of internal revenue, in these two letters which have been furnished me here, makes this same ruling. These letters are a clear ruling against the position taken by the defendant in this case—very clear—and to this effect, that when these spirits are inside of the bonded warehouse, and are sold from one person to another, in the bonded warehouse, the government is not disposed to consider them as subject to this provision in regard to sending out the spirits from his stock or possession; they are not to be regarded as sent out from his stock or possession. That I understand to be the ruling. That so long as they remain in the bonded warehouse they may change hands as often as you please. That seems to be about the idea.

Mr. Sherman.—Do I understand that your honor concurs with the commissioner?

THE COURT.—No. I have not said that. I have said that, for the purposes of this case, that decision covers this case. Because this is a case where, as I understand from the proof, Mr. McCullough says that he sold and delivered these spirits from the bonded warehouse. "But the party who receives them into his own private premises," that is into his store, "or takes them out of the government custody, must enter them in the prescribed book, whether he be the importer or a purchaser from the importer, or from a subsequent owner; and it will be sufficient identification of 'the place where received' to designate the particular bonded warehouse."

Referring to that letter, the commissioner says, in the following March: "So long as your imported spirits remain in the government warehouse, you are not required to enter the same in the wholesale liquor dealer's book. But when such spirits are re-

moved from the custody of the government, they must be entered as stated in my letter to Mr. Elliot." And in that view, which is very limited, it would cover a case where a party had sold them and delivered them from the bonded warehouse. But I am not disposed, myself, to give the statute so limited a construction as the commissioner of internal revenue seems to have given it. And I do this upon the ground that under this warehouse act, it seems to me, and under both branches of this law (although this particular statute does not cover the receipt), that under both branches of this law, and under the warehouse act, where a party receives foreign spirits and enters them for warehouse, and designates the warehouse that he has them in, for any purpose where the question arises under this statute, those are, for the purposes of this suit, to be regarded as the premises of that party—for the purposes of this suit—and as entering them into this man's stock in trade, becoming part of his stock in trade. He has the control of them. He can sell them, export them by drawback, or withdraw them for consumption or for any purpose whatever. Nobody else can sell them, unless somebody else pays the duty and withdraws them.

Mr. Cotterill.—If the goods remain in bond, and are not removed by the party who sold them for consumption, is he obliged to enter them in the book?

THE COURT.—I think so.

Mr. Cotterill.—He must even then make the entry?

THE COURT.—I think so.

Mr. Cotterill.—Then he would be obliged to make the entry in all cases of any importations, if he received the goods?

THE COURT.—I think so under the law, and under the laws of the warehouse act, which I have had occasion recently to examine in other cases, and which gives to the importer the privilege of designating the warehouse, I think the place where, after he imports those goods into this country, he puts those goods for safe-keeping, for his own convenience, are his premises, for the purposes of this suit; and that he receives those goods within the meaning of this statute, whether he puts them in his own store, or whether he puts them in a bonded warehouse, for the purpose of having the privilege of not paying the cash down for the duty, for the purpose of waiting to see whether he can satisfactorily sell them to somebody who will pay the duties, and thus relieve him from the necessity of paying them, or, if you please, getting a drawback for export, he substantially receives them. Because somebody must receive them. They are imported into this country, so they are received by some one; they are received by the importer; they are received by the consignee; they are received by the owner. This statute, however, is limited to a person who is a wholesale liquor dealer, and does not apply to anybody else. This statute applies to a person who "sells or offers for sale foreign or domestic spirits," according to this definition, "in quantities not less than five wine gallons at the same time." I see no greater hardship imposed upon these gentlemen who deal only in foreign stuff, than there is imposed upon those gentlemen who deal solely in domestic; not a particle. Practically, there is no greater duty imposed upon the one than on the other. There is nothing that this dealer in foreign spirits is required to do over and above what the domestic man is required to do. I should think it was just the other way. The domestic man is required to do more because he can do more. What I mean to say, is, there is no inequality in the law that requires the foreign man to do something in addition to anything that the domestic man can do. Therefore, there is no inequality in the law, none whatever. And when you find it as a branch of the law, which always, from the commencement, has required that the person who sells, or offers for sale, these foreign spirits, in terms, shall pay this one hundred dollars, the same as the man who offers for sale domestic spirits, it is perfectly clear that to keep up a uniform system, these provisions ought to be applicable to both classes, as congress has made them.

Mr. Cotterill.—I understand the court to state, that the entry should be made at the time the goods were received. May it not be a very serious question as to whether the goods are received?

THE COURT.—I cannot imagine now all possible cases. I believe the law declares that as soon as the goods arrive within the district, they are subject to duty.

Mr. Cotterill.—Of course, but they are in the custody of the collector. May not the term "receive" apply to that particular time when the importer withdraws the goods for consumption? Is not that the time that he receives his goods?

THE COURT.—No, sir; I think not. I think there would be confusion. He should be considered as receiving them when he puts them into the bonded warehouse. But that is a matter of latitude. The designation of a bonded warehouse is an act of potential control over the goods, and it seems to me that you may fairly assume that he receives the goods when, instead of putting them on a car and carrying them to his own shop or store, he says. "Put them in the bonded warehouse," that then he receives them by putting them into that bonded warehouse. That is a privilege which has always attached under the warehouse act. The importer has the privilege of designating the warehouse, as all these warehouse acts are matters of privilege. But for that the government would require, and for years did before we had the warehouse system, that the duty should be paid immediately

on the importation of the goods. No goods could be landed in this country without paying duty. They could be entered only for consumption.

Mr. Cotterill:— Having received them at at that particular time, suppose the importer afterwards sells them in bond; they might be successively sold in bond, and the entries would bear just this evidence of those transfers.

THE COURT.—Exactly, and, I think, in that same connection, that is a fair and reasonable interpretation of the statute, when it says, "at the time of sending out of his stock or possession any spirits, and before the same are removed from his premises." I think it is a fair and reasonable interpretation, that when he sells them in bond, and they stay in bond, that is, sends them out of his stock, they are no longer in his stock; and, notwithstanding, the mere fact that the other man does not choose to remove them from that bonded warehouse, and take them to another bonded warehouse, but chooses to leave them in that bonded warehouse, still that bonded warehouse ceases, by that act of the transfer of the goods, to be the premises of the vendor; they become the premises of the vendee. And that is a symmetrical system, it seems to me, and a system that can take care of itself.

Another fact that occurs to me as having great force is, that while it is, of course, an additional trouble to these gentlemen to make the entry, and while this law is subject, as all other revenue laws are, to this suggestion, that revenue officers may abuse it, yet so long as this system of a tax on domestic spirits exists, so long as we have so many of these spurious imitations of foreign spirits, it seems to me that this system is one which is quite as much for the benefit and protection of these gentlemen, who deal solely in genuine foreign spirits, as for the protection of anybody else; because it enables them to have a record of the spirits they have dealt in, and that if at any time the allegation is made that they have been dealing in domestic spirits which are fraudulent, and have not paid the tax, why, they have a record kept for themselves to which they can refer from time to time, to show precisely what spirits they have been dealing in, and have been sending out; and, therefore, it seems to me that, properly looked at, is a law which is for their benefit and protection decidedly, and ought to be looked at in that view.

I ought to add another thing, that my views on this subject are strengthened by this fact: that while this special tax on wholesale liquor dealers applies to anyone who sells or offers for sale foreign or domestic spirits or wines, that the provision in this section in regard to this case, applies only to spirits, and does not apply to wines.

With the views I have suggested, it seems to me that the government intended to have a record of both foreign and domestic spirits, for the purpose of indicating the facts in regard to them.